WALTER JENNERY, Respondent, *v.* AARON B. OLMSTEAD et al., Appellants.

Defendant O. was appointed general actuary of the S. S. Bank, and served in that capacity for five years, under an agreement by which he was to receive for his services " such sum or sums from the net profits of the institution as such profits after paying all incidental expenses may warrant, not to exceed $1,000 per annum." *Held,* that the agreement was to pay that sum, if earned, in annual payments out of the profits of the preceding year; if no profits were earned he was to receive no compensation, and no charge could be made on future savings; and that, therefore, in

Statement of case.

fixing the sum to which he was entitled, the profits in one year could not be reduced by the losses in a subsequent year.

It appeared that on July 1 of one year the bank had earned net profits to the amount of $648.43. *Held,* that in the absence of proof there could be no presumption that such profits were lost between that time and August 20, when the year's service terminated; and that O. was entitled to credit to that amount.

O. gave a bond, with defendant as surety, conditioned that O. would " well and truly, honestly and faithfully discharge his duties as general actuary, "etc. In an action upon the bond, it appeared that O. ceased to be general actuary on or before January 14, 1873, and thereafter up to February 10, 1873, he remained in the bank as clerk and book-keeper. On that day he drew out of the bank $429.99. *Held,* that this was not a breach of the condition of the bond ; and that the court erred in charging against the surety the amount so drawn out.

(Argued October 26, 1882 ; decided November 21, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 3, 1881, which affirmed a judgment, in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was upon a bond executed by defendant Olmstead as principal, and defendant Clement as surety, the substance of which as well as the material facts are stated in the opinion.

*E. F. Bullard* for appellant William H. Clement. The bail did not continue liable for Olmstead's acts after his resignation. (*Gilbert* v. *Luce,* 11 Barb. 91 ; *Bissell* v. *Saxton,* 77 N. Y. 191.)

The minor capacity in which he continued after his resignation was an entire new employment, for which the surety did not agree to be liable. (Chitty on Contracts [10th Am. ed.], 568-571 ; *Phillips* v. *Foxall,* L. R., 7 Q. B. 666 ; *Sanderson* v. *Astor,* L. R., 8 Exch. 73 ; *Buyers* v. *Eve,* L. R., 13 Eq. 450 ; 7, *Montague* v. *Tidcombe,* 2 Vt. 518 ; *Railton* v. *Matthews,* 10 C. & F. 934.) The bond merely provides that the surety will guarantee that " Olmstead shall well, truly, honestly and faithfully perform his duties," etc. In such a case the surety

is not liable for a mistake, etc. (*Union Bk.* v. *Clossey*, 10 Johns. 271; 15 Wend. 316; 1 Zabriskie, 100.)

*Matthew Hale* for appellants. The defendants cannot be charged in this action for any thing but a breach of official duty by Olmstead as actuary during the term while he was acting as such. (*Bissell* v. *Saxton*, 77 N. Y. 191, 194.) The words "well, truly, honestly and faithfully" in the bond apply to the honesty and not to the ability of the officer. (*Union Bk.* v. *Clossey*, 10 Johns. 271; *S. C.*, 11 id. 182; *U. S. Bk.* v. *Stearns*, 15 Wend. 314, 316; *Ins. Co.* v. *Lowenberg*, 14 W'kly Dig. 326.) Clement, as bail, did not continue liable for Olmstead's acts after his term of office had expired. (*Gilbert* v. *Luce*, 11 Barb. 91; *Bissell* v. *Saxton*, 77 N. Y. 191.)

*Edgar T. Brackett* for respondent. Olmstead had no authority by his sole act to adjust the account between himself and the bank, or to draw from the bank its money to pay a debt to himself. (*Voltz* v. *Blackmar*, 64 N. Y. 446.) He was the mere agent of the bank, and, as such, could not deal with himself as against his principal any more than any private agent could. (*Austin* v. *Daniels*, 4 Denio, 299; *Butts* v. *Weed*, 37 N. Y. 317.) It was a conversion of the funds of the bank for Olmstead to invest them in such security as the Waring note, for which he was liable. (*Austin* v. *Daniels*, 4 Denio, 299; *Hun* v. *Cary*, 59 How. 439; Morse on Banking, 195, 196; *Alexander* v. *Cauldwell*, 83 N. Y. 480.) The contract under which Olmstead was employed was an entire one, and the compensation to which he was entitled was such sum, not exceeding $1,000 a year, as the net profits of the institution taken through his whole term warranted, and he cannot be allowed to select such portions of time or fix such date as he may choose, and draw the profits out to that time as his salary, regardless of subsequent losses occurring under his own management. (*Osbrey* v. *Reimer*, 49 Barb. 265; 51 N. Y. 630; *Dunham* v. *Lee*, 14 W'kly Dig. 75.)

ANDREWS, Ch. J. The bond upon which the action is brought, is dated August 20, 1867, and was executed to the Saratoga Savings Bank. It recites the appointment of the defendant Olmstead as president and general actuary of the bank, and the condition is that he shall "well and truly, honestly and faithfully perform his duties as general actuary," etc. The defendant Olmstead acted as president and actuary from the time of his appointment until early in 1873, when he resigned. The bank assigned the bond and its claim thereunder to the plaintiff, who in 1878 commenced this action. By the contract between the bank and Olmstead, made August 19, 1867, it was provided "that as compensation for his (Olmstead's) services in that capacity (general actuary) he receive such sum or sums from the net profits of the institution, as such profits, after paying all incidental expenses, may warrant, not to exceed $1,000 per annum." The trial court found that on, and prior to January 1, 1873, the defendant Olmstead drew out of the bank $931.85, and on February 10, 1873, the further sum of $429.99, and entered such drafts at these dates respectively on the books of the bank, but that of the first sum, $281.90 was drawn to pay incidental expenses of the bank. The court further found that on the 10th of February, 1873, the liabilities of the bank were $38,474.31, and the assets of the same were, by reason of said drafts of the defendant Olmstead, but $37,739.61, leaving a balance of liabilities over assets of $734.64, and that said drafts by Olmstead upon the funds of the bank, amounted to a wrongful conversion by him of said sum of $734.64, for which the defendants were liable on their bond. The finding was in substance that when the drafts were drawn, the bank had a surplus of only $340.30, and that this was the only sum to which Olmstead was entitled on account of salary, and that his drafts in excess of that sum, for his personal account, were a wrongful appropriation of the funds of the bank. The court also found that the bank, on the 1st of July, 1869, had earned net profits to the amount of $648.43, but in ascertaining the profits for the purpose of fixing the sum to which the defendant Olmstead was entitled under his contract

with the bank, the court took into account the whole period of five years, during which he was in its employment, not making annual rests, but reducing the profits in one year by losses in a subsequent year, and this method of computation is sought to be justified on the ground that the contract was entire for the whole period of service, and that nothing became due to Olmstead until the expiration of his employment, however long it might continue. This is not a reasonable construction of the contract. The contract to pay a compensation out of the net profits, not to exceed $1,000 per annum, is, we think, a contract to pay that sum in annual payments out of the profits of the preceding year if earned. It is not reasonable to suppose that the parties understood that no right to demand payment of the stipulated compensation would accrue, except upon the death or resignation of Olmstead. It would leave the officer in the mean time without the means of support, if dependent upon his labor therefor. The natural interpretation of the transaction, is that the bank was willing to pay a salary of $1,000 a year, out of the net profits of the year, and Olmstead was willing to serve, taking the hazard of the profits being sufficient to pay his salary. If profits were not earned, he would get no compensation, and it would not become a charge on future earnings. If earned, he was entitled to be paid, and the bank could not charge against the profits of one year, the losses of a succeeding year. We think therefore the court erred in not crediting him with the whole profits of 1869. In the absence of proof there can be no presumption that they were lost between July 1 and August 20, when the year's service terminated, nor does the fact that the defendant Olmstead did not credit himself with the year's profits at the time, or the other circumstances show a practical construction of the contract contrary to its natural meaning. The court erred also we think in charging against the surety, the draft of February 10, 1873, of $424.99. The bond only bound him for the conduct of his principal while general actuary of the bank. The minutes of the trustees show that on the 20th of December, 1872, Olmstead resigned his office of president, " to take effect as soon after the first of January

(next) as he can make up and sign the report of January 1, 1873, say January 11, 1873, all other powers and duties as such president to terminate January 2, 1873," and that one Holden was on the same day duly elected president, " to take office from the termination of A. B. Olmstead's term as above stated." It further appears by the minutes that on the same day the defendant Olmstead " gave notice of his resignation of the position of general actuary, to take effect as above mentioned in regard to the presidency," and that one Day was elected general actuary in his place. It thus appears that the official term of Olmstead as general actuary expired at the latest, January 14, 1873, when the general report was made, and the evidence shows, and it is found by the court that Day entered upon the discharge of his duties as actuary, February 4, 1873; " but," the court adds, " the said Olmstead also remained in said bank, and continued to make entries on the books until February 10, 1873." The last part of this finding is explained by the previous one that Olmstead remained in the bank as clerk and book-keeper until February 10, 1873. The general finding, if in any degree conflicting, is controlled by the special findings above stated, and which accord with the evidence. The transaction of February 10, 1873, was after Olmstead ceased to be general actuary, and does not constitute a breach of the bond. For these reasons the judgment should be reversed, and it is unnecessary to consider the other questions in the case.

Judgment reversed and new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.